VINCENT P. LAROBINA *v.* ANDREW
MCDONALD ET AL.
(SC 17263)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued January 3—officially released July 12, 2005

*Vincent P. Larobina*, pro se, the appellant (plaintiff).

*William J. Wenzel*, with whom, on the brief, was *Brian C. Roche*, for the appellees (defendants).

*Opinion*

SULLIVAN, C. J. The plaintiff, Vincent P. Larobina, appearing pro se, brought a four count amended complaint against the defendants, Andrew McDonald, Peter Olson, Pullman and Comley, LLC (Pullman), and First Union National Bank (First Union), alleging abuse of process (count one), civil conspiracy (counts two and

three) and negligent infliction of emotional distress (count four). The trial court granted the defendants' motion for summary judgment as to all counts, and the plaintiff appeals from the judgment rendered thereon.[1] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In 1999, the plaintiff brought an action against First Union (first action).[2] The plaintiff alleged in the first action that, on September 25, 1986, he established a line of credit with Union Trust Bank (Union Trust) in the amount of $55,000, secured by a second mortgage on property known as 113 Grove Street, Stamford. The plaintiff further alleged that during 1991, Union Trust assigned the note and mortgage to First Fidelity Bank of Connecticut (First Fidelity). The plaintiff claimed that, on November 3, 1994, he entered into a mortgage extension agreement with First Fidelity, referred to as a "re-age agreement," under which First Fidelity agreed to extend the maturity date of the note and to allow the plaintiff to pay a monthly installment until the existing balance was paid in full. Thereafter, First Fidelity assigned the note and mortgage to First Union. The plaintiff claimed that First Union breached the re-age agreement by demanding payment in full, by disavowing the existence of the agreement and by reporting to credit agencies that the plaintiff was in default under the note and mortgage. He also made the following claims: negligence; defamation; violations of 15 U.S.C. § 1647 (a) and General Statutes § 36a-678 (a); violations of 18 U.S.C. § 1961; negligent infliction of emotional distress; violation of the covenant of fair dealing; violation of the Connecticut Unfair Trade Practices Act,

---

[1] The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The first action is still pending in the Superior Court. See *Larobina* v. *First Union National Bank*, Superior Court, judicial district of Stamford-Norwalk Docket No. CV-99-0170845.

General Statutes § 42-110a et seq.; negligent misrepresentation; and promissory estoppel. He sought compensatory damages, punitive damages, an order voiding the note, an order requiring First Union to return the money paid by the plaintiff under the note, and specific performance of the re-age agreement. McDonald and Olson, attorneys with Pullman, represented First Union in connection with the first action.

In 2002, the plaintiff brought the present action against First Union, Pullman, McDonald and Olson, in which he alleges that, in defending First Union in the first action, the defendants engaged in abuse of process, civil conspiracy and wilful conspiracy, and negligent infliction of emotional distress. After the pleadings were closed, the defendants filed a motion for summary judgment pursuant to Practice Book § 17-44,[3] claiming that: (1) the action constituted an improper attempt to circumvent the authority of the trial court in the first action; (2) defending First Union in the first action could not constitute abuse of process as a matter of law; (3) there is no cause of action for wilful conspiracy under Connecticut law and, even if there were, the plaintiff's claim would be barred by the applicable statute of limitations; (4) the plaintiff could not establish the elements of a claim of negligent infliction of emotional distress; and (5) summary judgment was warranted on the basis of the prior pending action doctrine.

In his objection to the motion for summary judgment, the plaintiff stated that the motion challenged the legal

[3] Practice Book § 17-44 provides: "In any action, except administrative appeals which are not enumerated in Section 14-7, any party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. These rules shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action. The pendency of a motion for summary judgment shall delay trial only at the discretion of the trial judge."

sufficiency of the complaint and, therefore, was actually the equivalent of a motion to strike, but he did not object to the motion on that ground. Instead, he argued that the allegations of his complaint were legally sufficient and that there were genuine issues of material fact regarding whether the re-age agreement was legitimate, whether a conspiracy existed, whether the statute of limitations barred his claim and whether the defendants' conduct was sufficiently egregious to impose liability for negligent infliction of emotional distress. The plaintiff further argued that the prior pending action doctrine was inapplicable to this case.

The trial court granted the defendants' motion for summary judgment. In the order granting the motion, the court stated that a motion for summary judgment may be used to challenge the legal sufficiency of a complaint. It concluded that the plaintiff's allegations failed to implicate any abuse of process and did not support a claim for negligent infliction of emotional distress. The court also concluded that the plaintiff's conspiracy claims were without any factual support.

On appeal, the plaintiff claims that: (1) the trial court improperly permitted the defendants to use a motion for summary judgment to test the legal sufficiency of the complaint; (2) the defendants are not entitled to summary judgment because genuine issues of material fact existed; and (3) the trial court, upon finding that the complaint was legally insufficient, improperly rendered summary judgment in favor of the defendants instead of permitting the plaintiff to replead. The defendants argue that the trial court properly treated their motion for summary judgment as a challenge to the legal sufficiency of the complaint and properly determined that the complaint was legally insufficient. They also claim, as an alternate ground for affirmance, that the complaint was barred by the prior pending action doctrine. We conclude that, under the circumstances of this case,

the trial court properly permitted the defendants to use a motion for summary judgment to test the legal sufficiency of the complaint. We further conclude that the trial court properly rendered judgment for the defendants on the plaintiff's abuse of process claim on the alternate ground that the claim is premature. With respect to the plaintiff's claims of civil conspiracy and negligent infliction of emotional distress, we affirm the judgment of the trial court on the alternate grounds that the claims against First Union are barred by the prior pending action doctrine and the claims against McDonald, Olson and Pullman are premature.

We first address the plaintiff's claim that a motion for summary judgment is an improper vehicle by which to test the legal sufficiency of a complaint.[4] "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary founda-

---

[4] The defendants contend that the plaintiff has not established that the trial court applied the standard for a motion to strike instead of the standard for a motion for summary judgment when it granted the defendants' motion and, therefore, that this court should not address this claim. We agree with the plaintiff, however, that it is clear from the trial court's order that it concluded that the plaintiff's claims of abuse of process and negligent infliction of emotional distress were legally insufficient. Moreover, the defendants' arguments that the trial court properly granted their motion for summary judgment, as set forth in their brief to this court, address the legal sufficiency of the claims.

tion to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Citations omitted; internal quotation marks omitted.) *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 368, 746 A.2d 753 (2000).

In contrast, "[a] motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly, rather than narrowly." (Citation omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 321, 813 A.2d 1003 (2003).

Our case law addressing the question of whether a motion for summary judgment may be used instead of a motion to strike to challenge the legal sufficiency of a complaint and, if so, under what circumstances, requires some clarification. In *Boucher Agency, Inc.* v. *Zimmer*, 160 Conn. 404, 408–409, 279 A.2d 540 (1971), this court suggested that, in light of the similarities between the procedures, the use of a motion for summary judgment for such a purpose is proper. See also *Pane* v. *Danbury*, 267 Conn. 669, 674 n.7, 841 A.2d 684 (2004) (allowing use of motion for summary judgment to challenge legal sufficiency of complaint when plaintiff did not raise objection in trial court); *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 32 n.17, 699 A.2d 964 (1997) (treating motion for summary judgment as motion to strike); *Hossan* v. *Hudiakoff*, 178 Conn. 381, 382 n.1, 423 A.2d 108 (1979) (court declined to consider whether use of motion for summary judgment

instead of motion to strike was procedurally proper when motion to strike properly would have been granted); *Gaudino* v. *East Hartford*, 87 Conn. App. 353, 357–58, 865 A.2d 470 (2005) (motion for summary judgment may be used to challenge legal sufficiency of complaint); but see *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624 (purpose of motion for summary judgment is not to test legal sufficiency of complaint but to test for presence of contested factual issues), cert. denied, 228 Conn. 908, 634 A.2d 297 (1993). We also have recognized, however, that the use of a motion for summary judgment instead of a motion to strike may be unfair to the nonmoving party because "[t]he granting of a defendant's motion for summary judgment puts the plaintiff out of court . . . [while the] granting of a motion to strike allows the plaintiff to replead his or her case." (Citation omitted; internal quotation marks omitted.) *Pane* v. *Danbury*, supra, 674 n.7, quoting *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 38 n.3, 727 A.2d 204 (1999) (*Berdon, J.*, dissenting); cf. *Kroll* v. *Steere*, 60 Conn. App. 376, 384 n.6, 759 A.2d 541 (motion for summary judgment may be treated as motion to strike when plaintiff did not claim that she should have been allowed to replead), cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000).

With these authorities in mind, we conclude that the use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading. See *Boucher Agency, Inc.* v. *Zimmer*, supra, 160 Conn. 410. If it is clear on the face of the complaint that it is legally insufficient and that an opportunity to amend it would not help the plaintiff, we can perceive no reason why the defendant should be prohibited from claiming that he is entitled to judgment as a matter of law and from invoking the only

available procedure for raising such a claim after the pleadings are closed. See Practice Book § 10-7 (filing of answer constitutes waiver of right to file motion to strike complaint). "It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. . . . Thus, failure by the defendants to demur to any portion of the . . . complaint does not prevent them from claiming that the [plaintiff] had no cause of action and that a judgment [in favor of the defendants was] warranted." (Citation omitted; internal quotation marks omitted.) *Brill* v. *Ulrey*, 159 Conn. 371, 374, 269 A.2d 262 (1970). Moreover, this court repeatedly "has recognized that the desire for judicial efficiency inherent in the summary judgment procedure would be frustrated if parties were forced to try a case where there was no real issue to be tried." *Fernandez* v. *Estate of Ayers*, 56 Conn. App. 332, 334–35, 742 A.2d 836 (2000) (citing cases).

In addition, we will not reverse the trial court's ruling on a motion for summary judgment that was used to challenge the legal sufficiency of the complaint when it is clear that the motion was being used for that purpose and the nonmoving party, by failing to object to the procedure before the trial court, cannot demonstrate prejudice. A plaintiff should not be allowed to argue to the trial court that his complaint is legally sufficient and then argue on appeal that the trial court should have allowed him to amend his pleading to render it legally sufficient. "Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 207, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

In the present case, the plaintiff stated in his brief to the trial court that the defendants were using the motion for summary judgment to challenge the legal sufficiency of his complaint. He then argued that the complaint was legally sufficient. We conclude, therefore, that he has waived any objection to the use of the motion for that purpose and any claim that he should be permitted to replead. Moreover, it is clear that the plaintiff has no further facts to allege that would cure the legal defects identified in this complaint. Accordingly, we consider the merits of the trial court's determination that the complaint was legally insufficient. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary." (Internal quotation marks omitted.) *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 268 Conn. 283, 292, 842 A.2d 1124 (2004).

We first address the plaintiff's claim that the trial court improperly rendered judgment for the defendants on his abuse of process claim. "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. *Varga* v. *Pareles*, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 532–33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there

is an incidental motive of spite or an ulterior purpose of benefit to the defendant. See also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121." (Emphasis in original; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772–73, 802 A.2d 44 (2002).

In the present case, the first count of the plaintiff's revised complaint alleges that the following specific acts by the defendants constituted abuse of process: (1) McDonald contemporaneously maintained an appearance on behalf of First Union in the first action and an appearance on behalf of the city of Stamford in a separate foreclosure action against the plaintiff, and this "dual representation" was a conflict of interest; (2) McDonald requested an extension of time to plead in the first action "due to the demands of his public office"; (3) the defendants failed to proceed on their objection to the plaintiff's amended complaint for eighteen months until ordered to do so by way of a motion to compel; (4) the defendants removed the first action to the United States District Court after three years of litigation in state court; (5) the defendants requested another extension of time to answer the complaint in the United States District Court; (6) the defendants failed to send a representative from First Union who had settlement authority to a settlement conference; (7) the defendants ignored the order of the United States District Court to file a written settlement proposal; (8) the defendants continued to tell the plaintiff that, if he failed to pay all money purportedly due on the original mortgage, First Union would impose fees, interest, penalties and other charges on him; (9) the defendants have continued to deny the existence of the re-age agreement despite voluminous evidence to the contrary produced

by the plaintiff; (10) the defendants have continued to maintain that Roderick Williams, who allegedly signed the re-age agreement, was never employed by First Union; and (11) the defendants have continued to deny any knowledge of Shelter Products, the corporate entity referred to in the re-age agreement.

The plaintiff alleges that this conduct demonstrated "an effort to use legal process for the undesigned purpose of waging a war of attrition against the plaintiff in order to coerce the plaintiff by unethical and extortionary means into surrendering his legal rights and assets." He further alleges that the defendants engaged in this conduct "to conceal and avert the consequences of fraudulent conduct; namely, the bank's original representation that the [r]e-age [a]greement constituted a valid mortgage term extension agreement . . . ."[5] The defendants respond that the conduct cannot constitute abuse of process as a matter of law because the defendants never employed legal process. In support of this claim, the defendants argue that " '[l]egal process' is generally defined within the scope of the tort of abuse of process as process which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act." 1 Am. Jur. 2d 410–11, Abuse of Process § 2 (1994); see also Black's Law Dictionary (6th Ed. 1990) (defining judicial process as "process which is used to inform

---

[5] The plaintiff, who elsewhere relies on the legality and validity of the re-age agreement, argues in his brief to this court that it may be invalid because it was executed by First Fidelity before that bank was officially chartered. The plaintiff appears to argue that First Union was attempting to force the plaintiff to comply with the terms of his original note and mortgage in order to conceal fraudulently the existence of the invalid agreement and others like it. The plaintiff does not explain why the existence of a valid agreement would be to First Union's detriment or why, if it would be detrimental, he believes that First Union would obtain a greater benefit from concealing the existence of the agreement than from denying its validity.

the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases").

This court previously has not considered the question of whether an abuse of process claim may be predicated on conduct other than the institution and prosecution of a legal action for an improper purpose. Our review of the case law from other jurisdictions reveals that most courts that have considered the issue have construed the term process broadly. See, e.g., *Hopper* v. *Drysdale*, 524 F. Sup. 1039, 1042 (D. Mont. 1981) (under Montana law, notice of deposition is process for purpose of tort of abuse of process); *Nienstedt* v. *Wetzel*, 133 Ariz. 348, 352, 651 P.2d 876 (1982) (process has been interpreted broadly to encompass entire range of procedures incident to litigation process); *Twyford* v. *Twyford*, 63 Cal. App. 3d 916, 923, 134 Cal. Rptr. 145 (1976) (same); *Kensington Land Co.* v. *Zelnick*, 94 Ohio Misc. 2d 180, 184, 704 N.E.2d 1285 (1997) (process includes all acts of court from beginning to end of action); *Foothill Industrial Bank* v. *Mikkelson*, 623 P.2d 748, 757 (Wyo. 1981) (process has been interpreted broadly to encompass entire range of procedures incident to litigation process); cf. *Gordon* v. *Community First State Bank*, 255 Neb. 637, 648, 587 N.W.2d 343 (1998) (process means "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property" [internal quotation marks omitted]), cert. denied, 528 U.S. 814, 120 S. Ct. 50, 145 L. Ed. 2d 44 (1999). The court in *Twyford* v. *Twyford*, supra, 923, explained that "[t]his broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution." All of these courts agree, however, that, although the definition of

process may be broad enough to cover a wide range of judicial procedures, to prevail on an abuse of process claim, the plaintiff must establish that the defendant used a *judicial process* for an *improper purpose. See Hopper* v. *Drysdale,* supra, 1041; *Nienstedt* v. *Wetzel,* supra, 353; *Twyford* v. *Twyford,* supra, 923; *Kensington Land Co.* v. *Zelnick,* supra, 184; *Foothill Industrial Bank* v. *Mikkelson,* supra, 757.

In the present case, most of the acts alleged by the plaintiff in support of his abuse of process claim did not involve a judicial procedure and, therefore, as a matter of law, do not support an abuse of process claim.[6] With respect to the acts that involved the use of judicial power, namely, McDonald's request to the trial court in the first action for an extension of time, the removal of the first action to federal court, the request for an extension of time in federal court and the motion for a mandatory settlement conference to which First Union allegedly failed to send a representative with settlement authority, we conclude that the abuse of process claim is premature. Although we do not suggest that success in the first action would be a prerequisite for an abuse of process claim by the plaintiff, it is apparent that the eventual outcome of that action and the evidence presented by the parties therein would be relevant in litigating an abuse of process claim. The plaintiff has not yet established that First Union is not legally entitled to the money that he claims the defendants are attempting to extort from him by their allegedly oppressive litigation tactics, or that First Union has no good

---

[6] The use of the judicial process was not implicated in the plaintiff's claims that, in the first action: McDonald's representation of both the city of Stamford and First Union created a conflict; the defendants failed to follow up on their objection to the plaintiff's amended complaint; the defendants failed to make a written settlement proposal; the defendants demanded payment of the note in full; the defendants denied the existence of the re-age agreement; the defendants claimed that Williams never worked for First Union; and the defendants denied any knowledge of Shelter Products.

faith reason to believe that it is entitled to the money. Those very issues are in dispute in the first action. If this abuse of process claim were allowed, the trial court would be required to litigate the issues twice. Moreover, allowing the claim could subject the courts to a flood of similarly duplicative claims and effectively chill the vigorous representation of clients by their attorneys. Accordingly, we need not determine in the present case the scope of the term process as used in this context. Even if it is assumed that the term is broad enough to cover a broad range of legal procedures beyond the improper prosecution of a legal action, we conclude that the trial court properly rendered judgment for the defendants on the ground that the claim is duplicative and premature.

We next address the plaintiff's claim that the trial court improperly rendered judgment for the defendants on his claims of civil conspiracy. "The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." (Internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 779, 835 A.2d 953 (2003). "[T]here is no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." (Citation omitted; internal quotation marks omitted.) Id., 779 n.37.

The plaintiff alleges that the defendants entered into a civil conspiracy designed "to fraudulently conceal an unlawful scheme on the part of [First Union] in which it exacted $50.00 from the plaintiff, and others similarly

situated, in consideration of a mortgage extension agreement; which mortgage extension agreement(s) the defendants now wilfully and fraudulently refuse to either acknowledge or honor." With respect to the allegation of an unlawful scheme, the plaintiff has not made any allegations or referred us to any evidence as to the nature or purpose of any such scheme, or how or why the defendants are attempting to conceal it. See footnote 5 of this opinion. Accordingly, we decline to consider the claim. With respect to the allegation that the defendants have conspired to refuse to honor the re-age agreement, the claim is premised solely on an alleged breach of contract and is of the same character as the breach of contract claims raised against First Union in the first action. Under the prior pending action doctrine, "[t]he pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 216, 719 A.2d 465 (1998). Moreover, allowing an action that raises claims that are substantially identical to claims raised in a prior action would undermine an orderly and efficient judicial process and would potentially lead to inconsistent verdicts. Because the civil conspiracy claims against First Union in the present case are of the same character as the breach of contract claims in the first action, we conclude, as an alternate ground for affirmance, that they should be dismissed under the prior pending action doctrine. We further conclude that the civil conspiracy claims against McDonald, Olson

and Pullman are premature for the same reasons that the abuse of process claim is premature.[7]

We next address the plaintiff's claim that the trial court improperly rendered judgment for the defendants on his claim for negligent infliction of emotional distress. "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . . This . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If such [distress] were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the [distress] were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Citations omitted; internal quotation marks omitted.) *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446–47, 815 A.2d 119 (2003).

We conclude that the trial court properly rendered judgment for the defendants on the plaintiff's negligent infliction of emotional distress claim for the same reasons that we have cited in connection with the plaintiff's other claims, namely, the claim is duplicative of the

---

[7] Moreover, we are far from certain whether an attorney's mere representation of a client, even if overly vigorous, can give rise to such a claim. Attorneys frequently do not become involved in breach of contract disputes until *after* the contract allegedly has been breached and their *obligation* at that point is to advocate vigorously their client's position. Such representation would be chilled and courts would be swamped if overly aggressive litigation tactics could give rise to a separate conspiracy claim. As we discuss later in this opinion, there are mechanisms by which such behavior can be addressed by the trial court within the context of the underlying litigation.

negligent infliction of emotional distress claim against First Union in the first action, allowing such claims would subject the courts to a flood of collateral actions arising from aggressive litigation tactics and would effectively chill the vigorous representation of clients by their attorneys, and the claim against McDonald, Olson and Pullman is premature.

We emphasize that although we have concluded that the trial court properly rendered judgment for the defendants on all counts of the plaintiff's complaint, we express no opinion as to whether the plaintiff may seek a remedy in the first action for his underlying claims of dilatory, bad faith and harassing litigation conduct by First Union and its attorneys. The trial court in the first action has authority to address any such claims and to order appropriate sanctions against the defendants if such conduct is found. See *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996).

The judgment is affirmed.

In this opinion the other justices concurred.