## ANN NOONAN *v.* MILLER MEMORIAL COMMUNITY HOME, INC., ET AL.

Judicial District of New Haven at Meriden
No. CV-01-0510353

Memorandum filed May 8, 2007

*Cooney, Scully & Dowling,* for the plaintiff.

*Robinson & Cole, LLP,* for the defendant.

HOLZBERG, J. *Perodeau* v. *Hartford,* 259 Conn. 729, 750, 792 A.2d 752 (2002), establishes that negligent infliction of emotional distress in the employment context arises only where it is based on unreasonable conduct of a defendant in the termination process. The question presented in the motion to strike filed by the

defendants in the present case is whether the allegations in the plaintiff's second amended complaint are sufficient to state a claim under the rule in *Perodeau.*

The defendants' motion to strike is the latest installment in a long-running dispute concerning the legal adequacy of the allegations of the third count of the complaints filed by the plaintiff, Ann Noonan, in which she asserts a claim of negligent infliction of emotional distress. The third count of the plaintiff's original complaint as well as the third count of her first amended complaint were the subjects of successful motions to strike, the courts, *Shluger, J.*, and *Dunnell, J.*, having ruled that neither count set forth sufficient allegations to sustain a claim of negligent infliction of emotional distress. To the great consternation of the defendants, the plaintiff has filed a second amended complaint, seeking, in the defendants' words, a third bite of the apple, as she attempts to respond to the defects identified by Judges Shluger and Dunnell.

Count three of the plaintiff's amended complaint dated December 26, 2006, asserts the following factual allegations.

First, Sister Ann Noonan, the plaintiff, was hired by the named defendant as its administrator in 1976.

Second, beginning on or before May, 2003, the named defendant began a targeted campaign and process calculated and intended to terminate her employment by imposing on her a series of unwarranted and unjustified demotions, investigations and disciplinary sanctions that would demean her and either force her to resign or provide a manufactured pretext for her termination.

Third, the process by which the defendants terminated the plaintiff's employment included the following acts and conduct arising out of seven different scenarios.

On several occasions, beginning in 2002, the defendants hired young staff members with the intention that they would replace the plaintiff.

In May, 2003, the defendants, without cause, demoted the plaintiff from her position as administrator, replacing her in that position with a much younger male.

On August 26, 2003, after conducting a secret investigation, the defendants issued a letter of severe reprimand. The letter was unjustified and imposed excessive and unnecessary penalties. The letter was issued without first affording the plaintiff a meaningful opportunity to answer the charges.

The penalties imposed in August, 2003, deprived the plaintiff of her ability to remain licensed as a nursing home administrator.

In October, 2003, the defendants performed an unnecessary and intrusive search of the plaintiff's office in her absence.

The defendants greatly exaggerated the significance of the forgotten antique pistol found in the plaintiff's office and, without reasonable cause or justification, demanded that the plaintiff accept a demotion or face termination of her employment. The defendants terminated the employment of the plaintiff, a twenty-six year employee, on November 18, 2003.

The defendants now move to strike the third count of the plaintiff's second amended complaint, arguing, principally, that under *Perodeau*, a viable claim for negligent infliction of emotional distress must arise out of conduct during the *termination process*. Given the defendants' view that the termination process in the present case is defined by the period between October 29, 2003, and the date of the plaintiff's termination of employment on November 18, 2003, they argue that the numerous incidents alleged in the plaintiff's complaint prior to October 29, 2003, cannot be considered. It follows, therefore, according to the defendants, that in

accordance with the rulings of Judges Shluger and Dunnell, who previously concluded that those allegations pertaining to the period between October 29 and November 18, 2003, are insufficient to make out a cause of action for negligent infliction of emotional distress, the most recent amended complaint must also fail.

The standards governing the court's review of a motion to strike are well established. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. *Larobina* v. *McDonald*, 274 Conn. 394, 400, 876 A.2d 274 (2005). It is fundamental that in determining the sufficiency of a pleading challenged by a party's motion to strike, all well pleaded facts and those facts necessarily implied from the allegations are taken as admitted. Id.

In *Perodeau*, our Supreme Court set forth the applicable legal framework for evaluating the legal sufficiency of a plaintiff's claim of negligent infliction of emotional distress. "In *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 700 A.2d 655 (1997), we again considered claims of wrongful discharge and negligent infliction of emotional distress. In that case, we concluded that the plaintiff had made out a prima facie case of wrongful discharge . . . but, relying on *Morris* [v. *Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986)] we also concluded that negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . Accordingly, we concluded that [t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough

to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. . . . We found that the actions that the defendant took in terminating the employment of the plaintiff, as alleged in his complaint, were not so unreasonable as to support a cause of action for negligent infliction of emotional distress. . . . Thus, *Parsons* stands for the proposition that a wrongful termination is not, in and of itself, a sufficient basis for a claim of negligent infliction of emotional distress." (Citations omitted; internal quotation marks omitted). *Perodeau* v. *Hartford,* supra, 259 Conn. 750.

"Accordingly, read together, *Morris* and *Parsons* merely stand for the proposition that, in cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress. The dispositive issue in each case was whether the defendant's conduct during the termination process was *sufficiently wrongful* that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." (Emphasis in original; internal quotation marks omitted.) Id., 751.

The dispositive issue in the present case is whether the plaintiff has properly alleged that the defendant's conduct during the termination process "was *sufficiently wrongful* that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that [that] distress, if it were caused, might result in illness or bodily harm." (Emphasis in original; internal quotation marks omitted.) Id. Contrary to the defendants' suggestions, a motion to strike is not the proper forum to determine whether the facts alleged in the complaint will be

proven at trial. Indeed, the court is obligated to assume the truth of the facts asserted. Nor is it the proper forum to rule, as a matter of law, whether the termination process began and ended on certain dates. That is a peculiarly factual matter entrusted to the judgment of the jury. Finally, and most critically, it is not the province of the court, in ruling on a motion to strike, to determine whether the constellation of facts alleged by the plaintiff, constitutes the type of conduct that is sufficiently wrongful that the defendants should have realized it would involve an unreasonable risk of causing the plaintiff emotional distress. Id. That, too, is ultimately a question reserved for the fact finder.

The plaintiff's allegations concerning the commencement of the termination process may ultimately be rejected. So, too, may her allegations concerning the wrongfulness of the acts complained of. A jury may well find, as the defendants claim, that the termination process commenced in October and concluded in November. It may also conclude that the conduct of the defendants during this time period was not wrongful but rather the normal incidents of a termination process. The key point, however, is that those are questions to be decided at trial and not in the context of a motion to strike.

A review of the plaintiff's second amended complaint dated December 26, 2006, reveals that she has clearly and specifically alleged the elements necessary to sustain a cause of action for negligent infliction of emotional distress as set forth in *Perodeau*. Specifically, the plaintiff alleges that the defendants' conduct during the termination process was unreasonable and that the named defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

The plaintiff has also set forth a series of actions by the defendants, which, if credited by the fact finder, are sufficient to support the elements of the plaintiff's cause of action. These include, but are not limited to, her demotion and replacement by a younger male, the issuance of a letter of severe reprimand, the search of her office and the ultimatum to accept a demotion or be fired. While these incidents, either standing alone or in the aggregate, may not ultimately persuade the fact finder, they are sufficient to withstand a motion to strike. See, e.g., *Kanios* v. *UST, Inc.*, United States District Court, Docket No. 3:03 CV369 (DJS), 2005 U.S. Dist. LEXIS 38115, *27 n.3 (D. Conn. December 30, 2005); *Copeland* v. *Home & Community Health Services, Inc.*, 285 F. Sup. 2d 144 (D. Conn. 2003) (holding that where employer pressured plaintiff to return to work by being inflexible about date on which she was required to return to work from medical leave, and by threatening to hire, and ultimately hiring, replacement when plaintiff did not return on desired date, motion to dismiss should not be granted); *Edwards* v. *Community Enterprises Inc.*, 251 F. Sup. 2d 1089 (D. Conn. 2003) (holding that where plaintiff, who was living on premises as part of share-home community, was discharged and then, despite knowledge worker had pneumonia, told to leave in forty-eight hours and threatened to have police evict her, summary judgment motion denied); *Cameron* v. *Saint Francis Hospital & Medical Center*, 56 F. Sup. 2d 235 (D. Conn. 1999) (denying motion to dismiss where plaintiff notified of impending termination of employment and alleged he was subsequently treated in embarrassing and humiliating manner during months leading to termination); *Nance* v. *M.D. Health Plan, Inc.*, 47 F. Sup. 2d 276 (D. Conn. 1999) (holding that where plaintiff alleges he was discharged and sent home without incident but subsequent investigation performed in embarrassing manner and factual questions regarding when actual termination process began, motion to dismiss denied).

Accordingly, for the foregoing reasons, the defendants' motion to strike count three of the plaintiff's second amended complaint dated December 26, 2006, is denied.