## AMERICAN PROGRESSIVE LIFE AND HEALTH INSURANCE COMPANY OF NEW YORK ET AL. *v.* BETTER BENEFITS, LLC, ET AL.
### (SC 17940)

Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued March 18—officially released June 9, 2009

*Steven D. Ecker*, with whom, on the brief, were *George C. Jepsen* and *Alinor C. Sterling*, for the appellants (defendants).

*E.J. Robbin Greenspan*, with whom were *Denise Purpura* and, on the brief, *Marci J. Silverman*, for the appellees (plaintiffs).

*Opinion*

KATZ, J. This appeal arises out of an action originally brought by the named plaintiff, American Progressive Life and Health Insurance Company of New York,[1] against the defendants, Better Benefits, LLC (Better Benefits), an independent insurance company, and three of Better Benefits' independent insurance agent/owners, Michael Klein, Marc Sullivan and William Barry.

---

[1] William Daly, vice president of marketing for American Progressive Life and Health Insurance Company of New York, also was a plaintiff in the underlying action. For purposes of this opinion, however, references herein to the plaintiff are to American Progressive Life and Health Insurance Company of New York only.

After the defendants filed a five count counterclaim,[2] the plaintiff moved for summary judgment on all but one of those counts, which the trial court granted and rendered judgment for the plaintiff, from which the defendants now appeal.[3] Although the defendants contest the propriety of the granting of the motion for summary judgment on several grounds, the dispositive issue is whether the trial court properly granted the motion when it challenged the legal sufficiency of the counterclaim, and the defendants were not given the opportunity to replead. We conclude that, under the circumstances of the present case and in accordance with our decision in *Larobina* v. *McDonald*, 274 Conn. 394, 876 A.2d 522 (2005), the trial court should have allowed the defendants to replead. We, therefore, reverse the trial court's judgment.

The record reveals the following undisputed facts and procedural history. In January, 2001, the plaintiff entered into a general agent agreement with Klein that authorized Klein to submit applications for insurance and annuities to the plaintiff in exchange for commissions on policies written on those applications. Subsequently, the plaintiff entered into producer agreements

---

[2] The defendants initially had asserted a five count counterclaim against both the plaintiff and its vice president of marketing, William Daly. See footnote 1 of this opinion. The defendants later withdrew their claims against Daly, as well as two counts of their counterclaim against the plaintiff, namely, those alleging quantum meruit and negligence. We therefore limit our discussion to the three remaining counts of the counterclaim against the plaintiff.

[3] Although the trial court's decision did not dispose of all of the counts of the counterclaim, the defendants filed a motion for an immediate appeal pursuant to Practice Book § 61-4, which the trial court granted. Practice Book § 61-4 (a) provides in relevant part that, in cases in which a trial court's judgment does not dispose of all of the counts against the party seeking to appeal, "[s]uch a judgment shall be considered an appealable final judgment only if the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . ." The trial court granted the motion without issuing a written decision.

with Sullivan and Barry, under which they were authorized to procure applications under Klein's direction. After the parties' terminated their relationship, under circumstances on which the parties do not agree, the plaintiff commenced an action against the defendants in December, 2002, alleging, inter alia, that they had breached the general agent agreement and/or producer agreements by engaging in a false and misleading campaign directed at the plaintiff's insureds in an effort to get them to switch their coverage to a different insurance company.

In November, 2003, the defendants filed their counterclaim against the plaintiff asserting: (1) breach of contract; (2) tortious violation of the implied covenant of good faith and fair dealing; and (3) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. See footnote 2 of this opinion. The defendants claimed, inter alia, that, after they had terminated their relationship with the plaintiff in accordance with their agreements, the plaintiff failed to pay commissions owed and "sent a letter to [the defendants] purporting to terminate the agreement by alleging multiple false allegations of misconduct on the part of [the defendants] . . . ." In March, 2004, the plaintiff filed an answer to the counterclaim, without having previously filed a motion to strike.

After discovery had concluded, in October, 2006, the plaintiff filed a motion for summary judgment on all counts of the counterclaim except the breach of contract count. The plaintiff contended that the allegations in support of these other counts were legally deficient because they related solely to the alleged breach of contract and: (1) the economic loss rule bars recovery in tort when a complaint alleges merely a breach of contract; and (2) a CUTPA claim cannot be based on a simple breach of contract. In response, the defendants contended that the economic loss rule is inapplicable

because it is limited to contracts covered by the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq., which governs contracts for the sale of goods. The defendants further contended that their counterclaim, while not particularly artfully drafted, alleged misconduct outside the scope of the contract that was legally sufficient for purposes of recovery under tort law and CUTPA. Although both parties submitted memoranda of law in support of their relative positions, neither party filed affidavits or other documentary evidence. At oral argument on the motion for summary judgment, the parties informed the trial court that they had settled the action in the plaintiff's original complaint against the defendants.

The trial court thereafter issued a decision rendering summary judgment in favor of the plaintiff on the tort and CUTPA counts of the counterclaim. In setting forth the basis of its decision, the court first concluded that the counterclaim had alleged no conduct that fell outside the context of the contract between the parties. The court therefore turned to the applicability of the economic loss rule, which it characterized as "[precluding] recovery under tort law for conduct wholly regulated by contract law." The court noted a split of trial court authority as to whether this court's recognition of the economic loss rule in *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 709 A.2d 1075 (1998),[4] a UCC case, should be expanded to busi-

---

[4] In *Flagg Energy Development Corp.* v. *General Motors Corp.*, supra, 244 Conn. 153, this court rejected the argument that the economic loss rule "does not apply to claims 'for negligent misrepresentation of information provided for the guidance of others or to claims for unfair trade practices.' " The court therein concluded: "We agree with the holdings of cases in other jurisdictions that commercial losses arising out of the defective performance of contracts for the sale of goods cannot be combined with negligent misrepresentation. See *Duquesne Light Co.* v. *Westinghouse Electric Corp.*, 66 F.3d 604, 618 (3d Cir. 1995); *Princess Cruises, Inc.* v. *General Electric Co.*, 950 F. Sup. 151, 155 (E.D. Va. 1996) (The parties are sophisticated corporations familiar with the type of services rendered, and the consequences of a mechanical failure likely to result from a failure to perform

ness relationships that are not regulated by the UCC. The trial court ultimately found persuasive the logic of those cases that had expanded application of the economic loss rule to cases not covered by the UCC in which both parties were "sophisticated," such that they would have been free to negotiate the allocation of risks under the terms of the contract. The trial court found that the parties in the present case were sophisticated because the plaintiff holds a national market position and the defendants' pleadings had "disclosed that [Better Benefits] was a top producer sophisticated in the global world of insurance products . . . ." It therefore concluded that the economic loss rule barred the count of the counterclaim alleging tortious violation of the implied covenant of good faith and fair dealing. The court further concluded that the CUTPA claim must fail because the defendants alleged nothing more than a simple breach of contract, specifically, the plaintiff's failure to pay commissions owed and the existence of a letter from the plaintiff stating that the commissions were forfeited due to alleged misconduct by the defendants. Neither the trial court nor the parties addressed this court's decision in *Larobina* v. *McDonald*, supra, 274 Conn. 394, which set forth certain parameters for the use of summary judgment in lieu of a motion to strike for challenging the legal sufficiency of a pleading.

In light of the split of trial court authority on the extension of the economic loss rule and the potential

the contract as promised. The parties were free to allocate the risks, insure against potential losses, and adjust the contract price as they deemed most wise. This [c]ourt sees no reason to extricate the parties from their bargain.); see also General Statutes § 52-572n (c); 1 Restatement (Third), Torts, Products Liability (proposed final draft) § 6, p. 303 (1996). These authorities are particularly persuasive in the circumstances of this case, in which the misrepresentation and CUTPA claims depend upon allegations of fact that are identical to those asserted in their claims." (Internal quotation marks omitted.) *Flagg Energy Development Corp.* v. *General Motors Corp.*, supra, 153–54.

waste of judicial resources that would result if there were two trials addressing the same set of facts upon a successful subsequent appeal, the defendants filed a motion for an immediate appeal, pursuant to Practice Book § 61-4, which the trial court granted. See footnote 3 of this opinion. We thereafter transferred the appeal from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendants contend that the trial court improperly: (1) failed to construe their allegations of tortious conduct broadly and, to the extent that the allegations were inadequate, failed to provide them the opportunity to replead as required under *Larobina* v. *McDonald*, supra, 274 Conn. 401–403; (2) concluded that the economic loss rule bars recovery under the circumstances of the present case; (3) found, as a matter of law, that the defendants are sophisticated parties; and (4) concluded that the CUTPA count alleged mere breach of contract. With respect to their right to replead, the defendants contend that, under *Larobina*, the plaintiff had the burden of proving that repleading would not cure the deficiencies in their counterclaim, a burden that the plaintiff did not meet.

In response, in addition to defending the propriety of the trial court's legal conclusions, the plaintiff contends that the defendants are not entitled to replead. Specifically, the plaintiff contends that the defendants waived their right to replead because, under *Larobina*, they were required to object to the use of the summary judgment procedure to avoid waiving that right. It further contends that, even if the defendants had been entitled to replead, their amended claims would have been barred by the applicable statute of limitations.

Even if we were to assume, without deciding, that the allegations were legally insufficient because they failed to allege conduct that fell outside the context of

the contract, we conclude that the defendants were entitled to replead.[5] We further conclude that, because the plaintiff conceded at oral argument before this court that the economic loss rule would not bar a claim for tortious conduct that clearly fell outside the scope of the contract, it would be premature for us to address the issue of whether this court's recognition of the economic loss rule in *Flagg Energy Development Corp.* v. *General Motors Corp.*, supra, 244 Conn. 126, should be expanded to business relationships that are not regulated by the UCC.

We begin with certain basic principles that distinguish the procedural devices of a motion for summary judgment and a motion to strike. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]. . . .

---

[5] We decline, however, to address the plaintiff's claim that such amendments would be time barred because, inter alia, we would be required to engage in a speculative comparison of the original and the yet to be repleaded complaints. See *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 800–805, 45 A.2d 955 (2008) (comparing original and amended complaint for purposes of relation back doctrine); see also id., 800 (leaving open question of whether standard of review of relation back determination is de novo or abuse of discretion).

"In contrast, [a] motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly, rather than narrowly." (Citation omitted; internal quotation marks omitted.) *Larobina* v. *McDonald,* supra, 274 Conn. 399–400; see Practice Book § 10-39 (addressing motion to strike).

Under our rules of practice, the filing of a responsive pleading waives the right to file a motion to strike. Practice Book §§ 10-6 and 10-7; see, e.g., *Daley* v. *Gaitor,* 16 Conn. App. 379, 389, 547 A.2d 1375, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). Thus, in the present case, by filing its answer to the counterclaim, the plaintiff waived its right to test the legal sufficiency of that pleading by way of a motion to strike.

In *Larobina* v. *McDonald,* supra, 274 Conn. 401–402, this court recognized that our case law had sanctioned the use of a motion for summary judgment to test the legal sufficiency of a pleading despite such a waiver. We acknowledged, however, that there are competing concerns at issue when considering the propriety of using a motion for summary judgment for such a purpose. On the one hand, "[i]f it is clear on the face of the complaint that it is legally insufficient and that an opportunity to amend it would not help the plaintiff, we can perceive no reason why the defendant should be prohibited from claiming that he is entitled to judgment as a matter of law and from invoking the only available procedure for raising such a claim after the

pleadings are closed. . . . It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. . . . Thus, failure by the defendants to [strike] any portion of the . . . complaint does not prevent them from claiming that the [plaintiff] had no cause of action and that a judgment [in favor of the defendants was] warranted. . . . [Indeed], this court repeatedly has recognized that the desire for judicial efficiency inherent in the summary judgment procedure would be frustrated if parties were forced to try a case where there was no real issue to be tried." (Citations omitted; internal quotation marks omitted.) Id. On the other hand, "the use of a motion for summary judgment instead of a motion to strike may be unfair to the non-moving party because [t]he granting of a defendant's motion for summary judgment puts the plaintiff out of court . . . [while the] granting of a motion to strike allows the plaintiff to replead his or her case." (Internal quotation marks omitted.) Id., 401; see Practice Book §§ 10-44 and 17-49.

In light of these competing concerns, in *Larobina*, we set forth the following parameters to clarify our case law: "[T]he use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." *Larobina* v. *McDonald*, supra, 274 Conn. 401. "[W]e will not reverse the trial court's ruling on a motion for summary judgment that was used to challenge the legal sufficiency of the complaint when it is clear that the motion was being used for that purpose and the nonmoving party, by failing to object to the procedure before the trial court, cannot demonstrate prejudice. A plaintiff should not be allowed to argue to the trial court that his complaint is legally sufficient and then argue on appeal that the trial court should have allowed him to amend his plead-

ing to render it legally sufficient. Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) Id., 402.

Turning to the case at hand, we begin by noting that we apply plenary review to the granting of either a motion for summary judgment or a motion to strike. See *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 7, 955 A.2d 538 (2008) (applying plenary review to decision granting summary judgment); *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 552–53, 944 A.2d 329 (2008) (applying plenary review to decision granting motion to strike).

The parties each rely on certain language in the aforementioned discussion of *Larobina* to argue that the burden was on the opposing party and that this burden was not met. Specifically, the plaintiff points to the defendants' failure to object to the use of the summary judgment procedure, while the defendants point to the plaintiff's failure to prove that repleading would not cure the defect. We conclude, however, that the record in the present case reflects a situation not specifically addressed in *Larobina*, but is one that, consistent with the principles set forth therein, entitled the defendants to replead.

Specifically, the crux of the plaintiff's argument before the trial court was that the allegations in support of the defendants' tort based claim and CUTPA claim were legally deficient because the defendants had alleged only conduct relating to the breach of contract. In their written objection to the motion for summary judgment, however, the defendants responded: "[The plaintiff] misconstrues the claims of [the defendants] in counts two and four as arising out of the contract.

This is not true. . . . Admittedly, some of the allegations of counts two and four seem to arise out of the contract. This, however, is a result of inartful pleading, and such claims should and will be deleted. The events that underpin [the defendants'] tort and CUTPA claims arose after the contract had been terminated, and cannot be said to be based on [the] contract. The main acts are the contacts made by [the plaintiff] with [the defendants'] clients, misrepresenting [the defendants'] intentions and implying that [the defendants were] under investigation. These contacts had nothing to do with the contract (other than the expectation of good faith and fair dealing) and do not stem from it. . . . The [defendants] will amend their [counterclaim] to reflect . . . the elimination of all claims in counts two and four, which seek damages for simple breach of contract."

At oral argument before the trial court, the parties argued about the meaning of the allegation in the counterclaim that the plaintiff had made false statements about the defendants, the plaintiff arguing that the plain meaning was that the allegation had been made to the defendants, and the defendants arguing that the allegation meant that the false statements had been made to their clients. The defendants again acknowledged that the counterclaim had not been drafted particularly well but underscored that their tort and CUTPA claims had nothing to do with the breach of contract for failing to pay commissions owed. The defendants argued that the conduct supporting the tortious interference and CUTPA claims was that the plaintiff had commenced "a campaign to stigmatize Better Benefits" by contacting all of the policyholders and stating that Better Benefits was under investigation, which the defendants claimed was not true. The defendants further underscored that this conduct had been the object of discovery over the past year and one-half to determine how

many people had been contacted and the extent of the losses resulting from these contacts. Therefore, the defendants contended that the plaintiff could not now claim to be surprised that these actions were the basis of their claims. They further contended that their request for damages beyond the loss of commissions evidenced that they had intended to advance noncontractual claims.

In our view, the record clearly reflects that the defendants' position before the trial court was that, if the court were to deem their allegations to be legally insufficient because they alleged nothing more than a breach of contract for the failure to pay commissions owed from the contract, the counterclaim could be amended to cure these defects. Indeed, the trial court's response indicated that it understood the claim the defendants intended to advance, but faulted them for not including those allegations in the counterclaim.[6] The defendants, however, had offered to amend their pleading if the court required further clarification as to the basis of the counterclaim. The rule that we set forth in *Larobina* does not bar a litigant from pursuing arguments in the alternative. In other words, a party does not waive its right to replead by arguing that the pleading is legally sufficient, but offering, if the court were to conclude otherwise, to amend the pleading. Therefore, the defendants' conduct did not indicate that they were "waiving the right to replead if the legal issue is decided against them." (Internal quotation marks omitted.) *Boucher Agency, Inc.* v. *Zimmer*, 160 Conn. 404, 409, 279 A.2d 540 (1971).

Moreover, the plaintiff, as the moving party, did not demonstrate, in accordance with *Larobina*, that, if the

---

[6] The trial court stated: "But, nowhere in [the counterclaims] do I have what you've told me that I sort of went along with and listened to. There's nothing in here that alleges what I'm going to think of [as] . . . interference with the business relationships between your clients and third party policyholders. It's not even in here."

defendants had been permitted to replead, thereby making it clear that their tort based claim and CUTPA claim were predicated on the plaintiff's alleged false statements *to the defendants' clients* that caused the defendants to lose the clients' business and goodwill, the legal deficiency underlying the plaintiff's motion for summary judgment would not have been cured. See *Carrasquillo* v. *Carlson,* 90 Conn. App. 705, 714, 880 A.2d 904 (2005) ("[i]n the absence of a waiver by the plaintiff, the person pursuing summary judgment also must demonstrate that the plaintiff is unable to remedy this defect through repleading"). Although we would agree with the plaintiff that we did not intend to suggest in *Larobina* that the moving party is required to *speculate* as to any hypothetical facts or theories that might save the opposing party's pleading, in the present case, the plaintiff was made aware of the defendants' theory as to the tort and CUTPA claims. Thus, the trial court should have treated the motion for summary judgment as a motion to strike, under which the defendants would have been afforded the opportunity to replead upon the granting of the motion.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.