******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

DAVID GODBOUT *v.* TONY ATTANASIO ET AL.
(AC 42683)

Alvord, Prescott and Bright, Js.

*Syllabus*

The plaintiff sought to recover monetary relief pursuant to statute (§ 12-170) for the alleged misconduct of the defendants, members of the town board of assessment appeals related to his motor vehicle tax assessment appeal. The defendants filed a motion to dismiss the plaintiff's action on the grounds that the trial court lacked subject matter jurisdiction because the plaintiff failed to exhaust his administrative remedies and had failed to allege that the defendants had engaged in some unlawful act or the omission of a necessary act, allegations that were required to support an action pursuant to § 12-170. The court granted the motion to dismiss on both grounds, from which the plaintiff appealed to this court. *Held*:

1. The trial court improperly held that it lacked subject matter jurisdiction over the plaintiff's action because the plaintiff failed to exhaust his administrative remedies before the Freedom of Information Commission (FOIC): there was nothing in the record before this court from which to conclude that the legislature intended that a plaintiff seeking to recover under § 12-170 must first exhaust any and all administrative remedies; § 12-170 does not contain an exhaustion requirement and nothing in the Freedom of Information Act (FOIA) statutory scheme mandates that any and all issues involving the FOIA must always be raised to and resolved by the FOIC before an action is brought in the Superior Court; moreover, there is no statute that confers any authority on the FOIC to impose monetary penalties on board members and, thus, it would have been futile for the plaintiff to have filed an administrative appeal because the FOIC lacked the ability to provide the plaintiff with the relief requested.

2. This court declined to consider the plaintiff's claim that a motion to dismiss was not the proper procedural vehicle to challenge the legal sufficiency of his complaint, the plaintiff having waived any objection to the defendants' use of a motion to dismiss by failing to raise that issue before the trial court.

3. The trial court properly determined that the plaintiff's complaint was insufficiently pleaded, the complaint having failed to allege any act or omission by an individual defendant that, if true, could satisfy the plaintiff's burden of demonstrating an unlawful act or omission necessary to prevail under § 12-170.

Argued January 16—officially released July 14, 2020

*Procedural History*

Action to recover damages for alleged official misconduct, brought to the Superior Court in the judicial district of New London where the court, *Calmar, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Improper form of judgment*; *reversed*; *judgment directed*.

*David Godbout*, self-represented, the appellant (plaintiff).

*Mark S. Zamarka*, with whom, on the brief, was *Edward B. O'Connell*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. In this statutory civil action brought pursuant to General Statutes § 12-170,[1] the plaintiff, David Godbout, appeals from the judgment of the trial court dismissing the action against the defendants, all of whom are individual members of the East Lyme Board of Assessment Appeals (board).[2] In his action, the plaintiff sought to recover monetary relief pursuant to § 12-170 on the basis of alleged misconduct by the defendants related to his motor vehicle tax assessment appeal. The plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction to adjudicate the merits of his action because he (1) failed to exhaust his administrative remedies with the Freedom of Information Commission (FOIC) before filing his action in Superior Court and (2) failed to allege sufficient facts in his complaint demonstrating that each of the defendants had engaged in some unlawful act, or had failed to perform a necessary act, related to the tax assessment appeal. Although we agree with the plaintiff with respect to his first claim, we disagree with the second. We also conclude that the form of the judgment is incorrect in that, rather than granting the motion to dismiss on jurisdictional grounds, the court should have rendered judgment in favor of the defendants.[3]

The following facts, which either are undisputed or are taken from the underlying complaint and viewed in the light most favorable to the plaintiff, are relevant to our consideration of the plaintiff's claims on appeal. The plaintiff is a resident of East Lyme (town). The plaintiff has a history of disputes with the town and the board.[4] In 2012, he filed a complaint with the FOIC against the board and the town alleging that they had violated the state's Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., "by not permitting [the plaintiff] or others with assessment appeals to view, listen, observe and attend the hearings of other persons appealing their motor vehicle tax assessments." *Godbout* v. *Board of Assessment Appeals*, Freedom of Information Commission, Docket No. FIC 2012–504 (August 28, 2013). The FOIC, after a hearing, concluded that the board had violated General Statutes § 1-225 (a)—FOIA's open meeting provision—as alleged by the plaintiff, and the FOIC ordered the town and board to comply strictly with § 1-225 in the future in conducting hearings and meetings concerning tax assessment appeals.

Following this decision by the FOIC, the plaintiff moved the board to disqualify the defendant Michael Foley from participating in any subsequent tax assessment appeal brought by the plaintiff because Foley allegedly had displayed bias against him, including calling him by vulgar names. Thereafter, Foley elected to recuse himself in matters involving the plaintiff. As of May, 2017, the defendant Patrick Hughes also elected

not to participate in property assessment appeals brought by the plaintiff due to Hughes' own negative interactions with the plaintiff.

On September 8, 2018, the plaintiff appeared before the board to challenge the taxes assessed by the town on his motor vehicles pursuant to General Statutes § 12-71 (f).[5] The board consisted of five elected members. Present at the hearing were the four defendants and a town clerk, Brooke Stevens, who acted as the recording secretary.[6] When it was time for the plaintiff to present his appeal to the board, the defendants Foley, Hughes, and William W. Mather III "indicated that they were disqualif[ying] themselves . . . by getting up and leaving the room." Although Hughes and Foley provided no explanation for their decisions on the record, Mather indicated that he worked for the law firm that represents the town in many legal matters.[7]

The plaintiff indicated to the defendant Tony Attanasio, the sole remaining board member present at the hearing, that the board appeared no longer to have a quorum present, and he assumed that, without a quorum, the proceedings automatically would be adjourned. The plaintiff also indicated to Attanasio that he was prepared to proceed with his argument but warned that any further proceedings might be void and also might violate the FOIC's prior orders directing the board to comply strictly with the FOIA requirements. Attanasio adjourned the proceedings, and the plaintiff indicated to Attanasio that he would await further instructions regarding a hearing on his appeal.[8] Shortly thereafter, on or about September 11, 2018, the board mailed the plaintiff a copy of the minutes of the September 8, 2018 hearing and a copy of his appeal application, both of which indicated that the board had taken no action on the plaintiff's appeal.

On October 1, 2018, the plaintiff, in response to the board's September 11, 2018 mailings, commenced the underlying action as a self-represented party. Although the plaintiff initiated his action as a small claims matter, the court, on motion by the defendants, subsequently transferred it to the regular civil docket of the Superior Court. See Practice Book § 24-21. The plaintiff filed the operative amended complaint on October 3, 2018. In that complaint, the plaintiff alleged that the defendants had engaged in official misconduct in violation of § 12-170 because they failed to comply with certain provisions of the FOIA.

The defendants filed a motion to dismiss the plaintiff's action on October 25, 2018, claiming that the court lacked subject matter jurisdiction over it. In their memorandum in support of the motion to dismiss, the defendants argued that because the plaintiff's complaint was premised on alleged noncompliance with the FOIA, he was required, pursuant to General Statutes § 1-206 (b) (1),[9] to seek relief by way of an appeal to the FOIC, and

that his failure to exhaust this administrative remedy deprived the trial court of subject matter jurisdiction over this statutory action. According to the defendants, the plaintiff did not file an appeal with the FOIC because he knew that the FOIC would not schedule a hearing "due to his abusive history." The defendants also argued that the plaintiff sought to avoid the administrative appeal requirement by framing his action as one seeking relief pursuant to § 12-170, but that such an action required allegations that the individual board members had engaged in some unlawful act or the omission of a necessary act, and, even construing the allegations in the complaint in the light most favorable to the plaintiff, the complaint failed to contain any such allegations.

The plaintiff filed a memorandum in opposition to the motion to dismiss. In it, he argued that a civil action commenced in Superior Court, and not an administrative appeal to the FOIC, was the proper vehicle to obtain the monetary relief provided by § 12-170, and that he was not seeking an adjudication of whether a FOIA violation had occurred but instead was asserting that the board members' actions amounted to a criminal violation of an existing FOIC order, a remedy for which was beyond the authority of the FOIC.

The court, *Calmar, J.*, heard argument on the motion to dismiss on December 17, 2018. The court rendered a judgment of dismissal on February 4, 2019, agreeing with the arguments of the defendants. The court reasoned as follows: "In paragraph 46 of the plaintiff's amended complaint, the plaintiff pleaded that his motor vehicle property assessment appeal was not heard by the [board] due to a lack of quorum, and [that] the [board] did not produce accurate minutes of the failed hearing. The plaintiff, however, did not appeal to the FOIC to reschedule a hearing. . . . [G]rievances against quorum and accurate minutes should be heard before the FOIC. Because the plaintiff did not have a hearing and did not receive a final decision from the FOIC, he has not exhausted all of his administrative remedies with the FOIC, and therefore, cannot appeal a decision through the Superior Court because the court lacks jurisdiction.

"In paragraph 62 of the plaintiff's amended complaint, the plaintiff pleaded that the defendants have committed 'criminal acts' and 'multiple violations' of General Statutes § 1-240. In paragraph 63 of the plaintiff's amended complaint, the plaintiff pleaded that the defendants have created a cause of action due to 'official misconduct' under § 12-170. . . . Here, an order has not been given by the FOIC, therefore, no member of the [board] has failed to comply with the FOIC and cannot be found guilty of criminal acts or multiple violations under § 1-240. . . . [With respect to the alleged violation of § 12-170], the plaintiff has alleged the defendants 'demonstrated official misconduct'; however, the

plaintiff fails to allege any specific incidents of misconduct. Even viewing the amended complaint in the light most favorable to the plaintiff, the plaintiff has failed to show that the [board] or any individual member of the [board] has committed an unlawful act or omission of a necessary act."

The court concluded: "Because the plaintiff has not exhausted all of his administrative remedies with the FOIC, and because no criminal or unlawful act, or omission of a necessary act performed by the [board] has been alleged in the amended complaint, this court lacks subject matter jurisdiction and the motion to dismiss is granted." This appeal followed.

We begin our discussion by setting forth the well settled standard of review that governs an appeal from a judgment granting a motion to dismiss on the ground of a lack of subject matter jurisdiction. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A court deciding a motion to dismiss must determine *not the merits of the claim or even its legal sufficiency*, but rather, whether the claim is one that the court has jurisdiction to hear and decide. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 219, 815 A.2d 281 (2003).

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10–30] may encounter different situations, depending on the status of the record in the case. . . . [If] a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to

dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . In that situation, [a]n evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 615–17, 109 A.3d 903 (2015).

In the present case, the parties supplemented the factual allegations as set forth in the complaint by attaching affidavits and public records to the motion to dismiss and to the opposition. Because no jurisdictional facts were disputed, however, no evidentiary hearing was required.

I

The plaintiff first claims that the court improperly concluded that it lacked subject matter jurisdiction to adjudicate the merits of his action because he had failed to exhaust his administrative remedies with the FOIC. We agree.

"Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . .

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action *that seeks a remedy that could be provided through an administrative proceeding*, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted; emphasis added; internal quotation marks omitted.) *Levine* v. *Sterling*, 300 Conn. 521, 528, 16 A.3d 664 (2011). "[If] a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Conse-

quently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief. . . .

"A primary purpose of the [exhaustion of administrative remedies] doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 564–65, 821 A.2d 725 (2003).

"Despite the important public policy considerations underlying the exhaustion requirement"; *Hunt* v. *Prior*, 236 Conn. 421, 432, 673 A.2d 514 (1996); appellate courts in this state have recognized several exceptions to the requirement, albeit "infrequently and only for narrowly defined purposes. . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate." (Citations omitted; internal quotation marks omitted.) Id. "[A]n administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief. . . . It is futile to seek a remedy [if] such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 259, 851 A.2d 1165 (2004).[10] Thus, a party is not required to exhaust administrative remedies if it is seeking a particular form of relief that the agency is unable or lacks authority to provide. See, e.g., *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 816–17, 82 A.3d 602 (2014) (holding mobile home residents were not required to exhaust administrative remedies before Department of Consumer Protection before asserting Connecticut Unfair Trade Practices Act (CUTPA) claim against mobile home park owner-operator because CUTPA contained no express or implicit exhaustion requirement and department lacked ability to provided injunctive and other relief available under CUTPA); see also *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 570 (noting that, although mere allegation of constitutional violation

premised on action of board or agency was insufficient to excuse party's failure to exhaust available administrative remedies, exhaustion doctrine is inapplicable if party challenges constitutionality of statute or regulation under which agency operates because administrative agency lacks authority to grant adequate relief in such instances).

Turning to the present case, the plaintiff commenced the underlying civil action pursuant to § 12-170, seeking monetary relief against individual members of the board. Section 12-170, titled "Penalty for Official Misconduct," provides in relevant part: "Each . . . member of the board of assessment appeals . . . who does any unlawful act or omits to do any necessary act connected with the levy, assessment or collection of any tax, shall forfeit fifty dollars to the person aggrieved thereby, to be collected by such person in an action on this statute . . . ." The plaintiff's complaint does not invoke General Statutes § 4-183 (a), which governs the filing of administrative appeals,[11] nor does he ask by way of relief for the Superior Court to adjudicate whether the board should have sustained his tax assessment appeal. "[In] construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10–11, 950 A.2d 1247 (2008). Accordingly, in determining whether the plaintiff was required to exhaust any administrative remedy prior to pursuing his civil action, we begin with the text of § 12-170.

Section 12-170, which was first enacted in 1887,[12] contains no explicit requirement of exhaustion. There is no language in the statute mandating that an aggrieved person first seek any form of administrative review or other agency action. Rather, the statute expressly authorizes a party aggrieved by an individual board member's undefined unlawful act or omission to bring "an action on [the] statute . . . ." The fact that the statute contains no express exhaustion language, although significant, does not, however, end the inquiry. We must look for any other indication that application of the doctrine would be consistent with legislative intent as reflected in the overall statutory scheme. See *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 564–65.

No court in this state has had the opportunity to discuss the legislative history of § 12-170, or how the statutory remedy provided therein fits within the extensive statutory framework governing personal property tax assessments. We need not do so in the present case to resolve whether the statute provides an independent basis for commencing an action in Superior Court that does not require a plaintiff first to seek review by the FOIC or other administrative remedy.

By its plain language, the statute does not limit a board member's liability to violations of FOIA or other administrative law statutes. Rather, it broadly provides for recovery on the basis of any unlawful act or omission. The legislature's use of such broad language counsels against a construction that would only permit a party seeking to recover under the statute if it first obtained agency input because not every instance of an unlawful act or omission necessarily would involve an administrative body. For example, if a board member were found criminally liable for taking a bribe to affect the outcome of a tax appeal, an aggrieved plaintiff arguably would have no conceivable administrative impediment to bringing an action under § 12-170.

The lack of any exhaustion requirement also is apparent from the fact that the statutory remedy provided for in § 12-170 long predates both the Uniform Administrative Procedures Act, General Statutes § 4-183 et seq., which was enacted in Connecticut in 1972, and the FOIA, which was enacted in 1975. In other words, at the time § 12-170 was enacted, the legislature could not have contemplated a need to protect the integrity of the FOIC or any other agency's role in administering its statutory responsibilities. See *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 565.

Nothing in the FOIA's statutory scheme mandates that any and all issues involving the FOIA always must be raised to and resolved by the FOIC before any type of action may be brought in Superior Court. In fact, General Statutes § 1-242 suggests that the opposite is true. Section 1-242 (a) provides in relevant part: "In any action involving the assertion that a provision of the [FOIA] has been violated or constitutes a defense, the court to which such action is brought shall make an order requiring the party asserting such violation or defense, as applicable, to provide the [FOIC] with notice of the action and a copy of the complaint and all pleadings in the action . . . ." Upon such notice, the FOIC is authorized to seek to intervene in the action. In other words, the legislature contemplated that actions might be brought in court involving issues related to the applicability and compliance with provisions of the FOIA, and rather than imposing any blanket exhaustion requirement, provided a means for the FOIC to intervene in such action to protect its interests.[13]

Furthermore, we are not aware of any statute that would confer any authority on the FOIC to impose monetary penalties on board members, and the defendants have cited to no such authority. In fact, they conceded at oral argument before this court that the FOIC could not grant the plaintiff the relief provided for under the statute. Accordingly, even if it is within the FOIC's administrative expertise to determine whether the board or any member had complied with particular FOIA requirements, it would have been futile for the plaintiff to have filed an administrative appeal in this matter because the FOIC lacked the ability to provide the plaintiff with the relief he requested, namely, the imposition of the relief provided for in § 12-170. See *Cummings* v. *Tripp*, 204 Conn. 67, 80, 527 A.2d 230 (1987) (noting "administrative relief cannot encompass a monetary award" and, if "administrative relief is inadequate, we do not require a party to exhaust administrative remedies"). In order to obtain the statutory relief he sought, a civil action in Superior Court was inevitable. Although the plaintiff ultimately might be unable to prove the existence of the type of unlawful act or omission contemplated to sustain a cause of action under § 12-170, such consideration is immaterial to the question of whether the court lacked jurisdiction to consider the plaintiff's action because of the doctrine of exhaustion of administrative remedies.

There is nothing in the record before us from which to conclude that the legislature intended that a plaintiff seeking to recover under § 12-170 first must exhaust any and all administrative remedies. If the legislature believed that the remedy it had provided in § 12-170 required reformation in light of its adoption of administrative law procedures, it could have amended the statute. For example, it could have defined or limited the types of unlawful acts or omissions that the statute was intended to remedy, or included language that would require a plaintiff to exhaust any available administrative remedies if the allegations of unlawfulness concerned violations of agency rules or regulations. We do not need to resolve whether § 12-170 is outmoded or anachronistic, or whether the legislature's failure to amend or repeal it reflects an oversight or a conscious intention to retain an existing, independent cause of action.[14] It suffices that there is nothing in § 12-170's unambiguous language or its relationship to the administrative scheme that suggests any intent on the part of the legislature to incorporate an exhaustion requirement.

We observe that the present case does not fall neatly into the category of cases in which the exhaustion doctrine commonly arises. This case is not one in which a litigant has merely skipped over a step in the ordinary administrative appeal process by, for example, appealing directly to the Superior Court from the decision of

an agency or hearing officer without first engaging the agency's own appellate body. See *State ex rel. Golembeske* v. *White*, 168 Conn. 278, 282, 362 A.2d 1354 (1975). Here, the plaintiff followed the administrative path set forth by the legislature for appealing his tax assessment to the board. Further, review of the board's decision ordinarily would have been by appeal to the Superior Court. See General Statutes § 12-117a. The board, however, took no final action on the plaintiff's tax appeal prior to his filing this civil action. Instead, the scenario at issue in the present case is much more akin to cases in which the Superior Court has jurisdiction over a matter but that matter involves issues implicating the expertise and decision-making authority of an administrative agency—in this case, the FOIC. Any abstention by the court in resolving the present matter thus falls closer to the doctrine of primary jurisdiction than implicating the exhaustion doctrine. See footnote 10 of this opinion. In other words, if the trial court believed that the FOIC should be asked to resolve in the first instance whether board members had violated substantive provisions of the FOIA, the court could have stayed the matter and referred the case to the FOIC for consideration, rather than dismissing the action for lack of subject matter jurisdiction.

Having determined that no express or implied legislative intent existed to impose an exhaustion requirement, we examine the trial court's rationale for reaching a contrary conclusion. In granting the defendant's motion to dismiss, the trial court appears to have focused too narrowly on the plaintiff's allegations of FOIA violations. A complaint, like any pleading, properly must be viewed in its entirety and with an eye toward finding jurisdiction over the claims asserted, not the opposite. See *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 83, 700 A.2d 655 (1997) (noting Connecticut follows modern trend of construing pleadings broadly and that any complaint "must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded" (internal quotation marks omitted)); see also *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009) (noting "well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged" (internal quotation marks omitted)).

Here, the court construed the complaint principally as one seeking administrative review of the underlying property assessment appeal procedures and determined that the plaintiff first was required to file an administrative action with the FOIC. The court refers to § 4-183 despite the fact that the complaint contains no specific claim of error directed at any particular administrative ruling. The court further failed properly to account for express allegations in the complaint that directly contradict the court's construction.

In determining the cause of action alleged in the complaint and whether the plaintiff was required to exhaust any available administrative remedies, the court should have focused on the *relief* that the plaintiff sought. In the section of the complaint captioned "Relief Sought," the plaintiff expressly states: "This complaint is not about an assessment appeal; it's squarely focused on official misconduct." Although such a statement is not binding on the court's interpretation of the pleading as a whole, when viewed in the light most favorable to the plaintiff and to upholding the court's jurisdiction, it nonetheless supports a conclusion that the plaintiff's intent was not to file an administrative appeal but a civil action seeking statutory civil penalties for official misconduct as authorized by our legislature.

Moreover, in analyzing whether the plaintiff failed to exhaust administrative remedies, the court appears to have failed to consider whether the FOIC had any authority to provide the plaintiff with adequate relief. Although we have concluded that § 12-170 does not require the exhaustion of administrative remedies prior to filing an action with Superior Court, even if we concluded to the contrary that the exhaustion doctrine applied to § 12-170, an exception would exist because, as we already have concluded, the FOIC lacked any authority to grant the specific relief contemplated under the statute, and, therefore, any administrative appeal would have been futile and not a jurisdictional prerequisite to filing an action in Superior Court.

We conclude that the court improperly granted the motion to dismiss on the ground that it lacked subject matter jurisdiction because the plaintiff failed to exhaust administrative remedies. That conclusion, however, is not fully dispositive of the present appeal because the court also concluded as an independent basis for granting the defendants' motion that, even if the plaintiff could bring a statutory cause of action pursuant to § 12-170 directly to Superior Court, the factual allegations in his complaint were legally insufficient to maintain such an action. We now turn to that issue.

II

Having concluded that the plaintiff did not fail to exhaust his administrative remedies, we turn to the plaintiff's claim that the court also improperly granted the motion to dismiss on the ground that he failed to include sufficient factual allegations in the complaint demonstrating that each individual defendant had engaged in some unlawful act, or had failed to perform some mandatory act, connected to his tax assessment. We conclude that the plaintiff's complaint failed, as a matter of law, to sufficiently allege a cause of action pursuant to § 12-170.

Before addressing the merits of this claim, we first turn to the plaintiff's argument, raised for the first time

on appeal, that the motion to dismiss was not the proper procedural means for the defendants to challenge the legal sufficiency of the complaint. Because we conclude that the plaintiff waived any procedural irregularity by failing to raise that issue to the trial court, it cannot provide a sound basis for reversing the substance of the court's ruling on the motion to dismiss.

A

In addition to concluding that the plaintiff had failed to exhaust his administrative remedies, the court also granted the motion to dismiss on the basis of the legal insufficiency of the complaint's factual allegations. Ordinarily, a motion to strike, and not a motion to dismiss, is the proper means "to contest . . . the legal sufficiency of the allegations of any complaint . . . ." Practice Book § 10-39.

In *Egri* v. *Foisie*, 83 Conn. App. 243, 247–50, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004), this court reversed the trial court's judgment granting a motion to dismiss that had challenged the legal sufficiency of the plaintiff's complaint, concluding that the trial court should have denied the defendant's motion because it was improperly utilized to achieve the goal of a motion to strike. This court considered the distinct functions of the motion to dismiss and the motion to strike, noting that "[t]here is a significant difference between asserting that a plaintiff *cannot* state a cause of action and asserting that a plaintiff *has not* stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike." (Emphasis in original) Id., 247. "A motion to dismiss does not test the sufficiency of a cause of action and should not be granted on other than jurisdictional grounds." (Internal quotation marks omitted.) Id., 248.

It is axiomatic that a complaint that fails to allege enough facts to state a legally sufficient cause of action remains "within the trial court's subject matter jurisdiction, albeit subject to a motion to strike for failure to state a legally sufficient claim . . . ." (Internal quotation marks omitted.) Id., 249, citing *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). Permitting a motion to dismiss to challenge the legal sufficiency of pleadings would be especially unfair to the plaintiff given that "the rule of court . . . granting a right to plead over after [the motion to strike] would not apply to [a] motion to dismiss." (Internal quotation marks omitted.) *Egri* v. *Foisie*, supra, 83 Conn. App. 248. Thus, the distinction between the motion to dismiss and the motion to strike is not merely semantic. Whereas the granting of a motion to dismiss terminates an action save for the right to appeal the dismissal, the granting of a motion to strike affords a party the right to amend any deficiency by repleading. See Practice Book § 10-44.

In *Larobina* v. *McDonald*, 274 Conn. 394, 399–403, 876 A.2d 522 (2005), the Supreme Court considered an analogous issue, namely, whether a motion for summary judgment, rather than a motion to strike, properly could be used to challenge the legal sufficiency of a complaint. As is the case with a judgment granting a motion to dismiss, a plaintiff is not entitled to replead following the granting of a motion for summary judgment. See id., 401 ("use of a motion for summary judgment instead of a motion to strike may be unfair to the nonmoving party because [t]he granting of a defendant's motion for summary judgment puts the plaintiff out of court . . . [while the] granting of a motion to strike allows the plaintiff to replead his or her case" (internal quotation marks omitted)). The Supreme Court nonetheless held that "we will not reverse the trial court's ruling on a motion for summary judgment that was used to challenge the legal sufficiency of the complaint when it is clear that the motion was being used for that purpose and the nonmoving party, by failing to object to the procedure before the trial court, cannot demonstrate prejudice. A plaintiff should not be allowed to argue to the trial court that his complaint is legally sufficient and then argue on appeal that the trial court should have allowed him to amend his pleading to render it legally sufficient. Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) Id., 402.

Accordingly, as this court recently explained, "[t]o avoid waiving a right to replead, a nonmoving party must, before the trial court decides the summary judgment motion, either object to the trial court's deciding the case through summary judgment and argue that it should instead decide the motion as a motion to strike to afford it the opportunity to replead a legally sufficient cause of action or, in the alternative, the nonmoving party may maintain that its pleading is legally sufficient, *but it must offer to amend the pleading if the court concludes otherwise.* See *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, 292 Conn. 111, 124, 971 A.2d 17 (2009) ('a party does not waive its right to replead by arguing that the pleading is legally sufficient, but offering, if the court were to conclude otherwise, to amend the pleading')." (Emphasis added.) *Streifel* v. *Bulkley*, 195 Conn. App. 294, 302, 224 A.3d 539, cert. denied, 335 Conn. 911, 224 A.3d 539 (2020). We can discern no reason not to employ this same analysis to claims that the trial court improperly considered the legal sufficiency of a complaint in adjudicating a motion to dismiss.

On appeal, the plaintiff argues that a motion to dismiss was not the proper procedural vehicle to address

alleged insufficient factual allegations in his complaint. The plaintiff admitted at oral argument before this court, however, that he never made this procedural argument to the trial court in opposition to the motion to dismiss. On appeal, although the plaintiff now argues that the defendants should have filed a motion to strike rather than a motion to dismiss, he does not explain how he was prejudiced by this procedural irregularity, i.e., he does not claim that he asked for an opportunity to replead or that, if the court had provided him with such an opportunity, he would have alleged additional factual allegations in support of his action. Because the plaintiff waived any objection to the use of the motion to dismiss to challenge the legal sufficiency of the complaint, and he does not complain that he was prejudiced, we decline to consider this claim on appeal. We therefore turn to the merits of the trial court's determination that the complaint was legally insufficient, which presents a legal question over which we exercise plenary review. *Larobina* v. *McDonald*, supra, 274 Conn. 403.

### B

"Connecticut is a fact pleading jurisdiction . . . ." *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 626, 99 A.3d 1079 (2014). Therefore, a pleading must "contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ." Practice Book § 10-1. "The purpose of fact pleading is to put the defendant and the court on notice of the important and relevant facts claimed and the issues to be tried." *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, 194 Conn. App. 316, 330, 220 A.3d 890 (2019). In considering the legal sufficiency of a complaint, a court "take[s] the facts to be those alleged in the [pleading] . . . and [it] construe[s] the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). In considering whether sufficient facts have been alleged that, if provable, would support a cause of action, however, a court will not consider mere legal conclusions or the truth or accuracy of opinions stated in the pleadings. See *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 588, 693 A.2d 293 (1997).

As indicated in part I of this opinion, we construe the plaintiff's complaint as seeking relief for the defendants' alleged violation of § 12-170. To state a cause of action against an official pursuant to § 12-170, a plaintiff must allege facts that, if proven, would establish that the official engaged in some official misconduct by committing an unlawful act or failing to perform a necessary act pertaining to a tax assessment. Even construing the allegations set forth in the complaint in a light most favorable to the plaintiff, we agree with the assessment of the trial court that the plaintiff's complaint failed to

allege sufficient facts to state a cause of action under § 12-170.

Although the plaintiff alleges in his complaint that "the defendants have created a cause of action under § 12-170" and "have committed criminal acts, multiple violations of § 1-240 in their individual capacities," those allegations are mere legal conclusions. He fails to allege the material facts on which he relied in reaching those legal conclusions. The plaintiff does not allege that the defendants ever were criminally charged or prosecuted for a misdemeanor violation of a prior FOIC order pursuant to § 1-240.[15] Indeed, he merely states his opinion that such a violation occurred. Although the plaintiff alleges that there was a lack of a quorum to hear his appeal, the only factual inference to draw from the allegations in the complaint was that the lack of quorum was due to the plaintiff's own request that a majority of the board members recuse themselves, which they did. The sole remaining board member present, Attanasio, adjourned the hearing without taking any action on the plaintiff's appeal, which was, as alleged in the complaint, precisely what the plaintiff had requested.

There are no allegations in the complaint that the individual members acted outside their duties as board members, for example, by conspiring to deprive the plaintiff of a fair hearing or acting out of corruption or undue influence. The only factual allegation in the complaint of individual acts or omissions by the defendants Foley, Hughes, and Mather directly related to the plaintiff's tax assessment was that they recused themselves in the face of the plaintiff's request for recusal. An allegation that an individual board member recused himself or herself from deliberations when requested by a party to do so cannot, without some additional factual allegations, which are absent in this complaint, amount to an illegal act or omission of a necessary act constituting official misconduct. The only factual allegations regarding Attanasio's action are that he adjourned the hearing after the plaintiff raised that the board no longer had a quorum present to hear his appeal and that he signed the notice and hearing minutes sent to the plaintiff indicating that the board had taken no action on the appeal. Again, those allegations, even if true, would not in and of themselves support the plaintiff's legal conclusion that Attanasio engaged in official misconduct. Although the plaintiff alleged that he construed the statement "take no action," as set forth in the hearing minutes and notice, as being a denial of his appeal, that is an opinion or legal conclusion that is not binding on this court in considering whether the complaint was legally sufficient regarding its assertion of official misconduct. See *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 588.

This court asked the plaintiff at oral argument to identify those specific allegations in the complaint that, if true, would support his assertion that the individual defendants, and not the board generally, engaged in misconduct. He was unable to direct us to any such specific factual allegations. His brief contains a chart that he claims demonstrates that his complaint was "riddled with such allegations that would support a finding of a violation of [§] 12-170," but that chart, which makes reference to nearly every paragraph of the complaint, is not accompanied by any analysis of a particular allegation or its relevance to the issue of legal sufficiency.

Contrary to the plaintiff's argument on appeal, and consistent with the ruling of the trial court, we conclude that the complaint fails to allege any act or omission by an individual defendant, that, if established as true, could satisfy the plaintiff's burden of demonstrating an unlawful act or omission necessary to prevail under § 12-170. Accordingly, the trial court properly determined that the complaint was insufficiently pleaded, and, because the plaintiff never raised his inability to replead as an issue before the trial court, the court's granting of the motion to dismiss was not reversible error.

The form of the judgment is improper; the judgment dismissing the complaint is reversed, and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] General Statutes § 12-170 provides in relevant part: "Each . . . member of the board of assessment appeals . . . who does any unlawful act or omits to do any necessary act connected with the levy, assessment or collection of any tax, shall forfeit fifty dollars to the person aggrieved thereby, to be collected by such person in an action on this statute . . . ."

[2] The defendants are Tony Attanasio, Michael Foley, Patrick Hughes, and William W. Mather III.

[3] As we discuss in part II of this opinion, the plaintiff waived any claim that a motion to dismiss was not the proper vehicle for challenging the legal sufficiency of his complaint.

[4] In their brief, the defendants label the plaintiff a "serial abuser" of the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., and describe in some detail the plaintiff's past interactions with town officials related to what the defendants characterize as "the plaintiff's FOIA obsession." The defendants attached documents in support of these assertions as exhibits to their motion to dismiss that are part of the record on appeal.

[5] The plaintiff successfully has challenged previous assessments on the same vehicles. The gravamen of the plaintiff's argument is that the values attributed to his vehicles, which are provided to the town assessor's office by the state, are based on data that does not properly take into account the actual condition of his vehicles, resulting in a purported overvaluation and, correspondingly, an unfair tax assessment.

[6] According to the meeting minutes, the board's fifth member, Susan Graham, was absent.

[7] The meeting minutes indicate that Foley's and Hughes' recusals were precipitated by the plaintiff having filed a motion asking that they have nothing to do with his appeal.

[8] The minutes of the hearing indicate that the plaintiff also suggested that Foley, Hughes, and Mather resign from the board and that new members be appointed.

[9] General Statutes § 1-206 (b) (1) provides in relevant part: "Any person

. . . wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by the Freedom of Information Act may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission. . . .”

[10] Many of the policy considerations underlying the exhaustion of administrative remedies doctrine are equally applicable to a related abstention doctrine—namely, the doctrine of primary jurisdiction or prior resort. See *Sharkey* v. *Stamford*, 196 Conn. 253, 255–56, 492 A.2d 171 (1985) (discussing difference between doctrines of exhaustion of administrative remedies and primary jurisdiction). It is helpful to our discussion to briefly set forth the interplay between these two doctrines. “The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun, but has not yet been completed; where there is no administrative proceeding under way, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy.” Id.

“The doctrine of primary jurisdiction, like exhaustion, is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency’s findings and conclusions. . . . Ordinarily, a court should not act upon subject matter that is peculiarly within the agency’s specialized field without giving the agency an opportunity to apply its expertise, for otherwise parties who are subject to the agency’s continuous regulation may become the victims of uncoordinated and conflicting requirements. . . . Primary jurisdiction is applied in order to ensure that an orderly procedure will be followed, whereby the court will ultimately have access to all the pertinent data, including the opinion of the agency. . . . [If] an action raises a question concerning the validity of an agency practice, the doctrine is particularly applicable. . . . The aim is to prevent disjointed, uncoordinated, and premature decisions affecting policy. . . .

“There are instances, however, in which the application of the doctrine [of primary jurisdiction] will not serve these interests. The controversy may turn on a question of pure law which has not been committed to agency discretion. . . . Further, resort to agency proceedings may be futile and might also work severe harm on the party seeking relief.” (Citations omitted; internal quotation marks omitted.) Id., 256–57. Importantly, unlike the doctrine of exhaustion of administrative remedies, which, as indicated, implicates the subject matter jurisdiction of the court; see *Stepney, LLC* v. Fairfield, supra, 263 Conn. 563; “[t]he doctrine of primary jurisdiction is a rule of judicial administration created by court decision . . . .” *Waterbury* v. *Washington*, 260 Conn. 506, 574, 800 A.2d 1102 (2002); see also *State ex rel. Golembeske* v. *White*, 168 Conn. 278, 281, 362 A.2d 1354 (1975) (“doctrine of primary jurisdiction is invoked only to determine who will initially decide an issue . . . it cannot operate to divest a court of its ultimate jurisdiction” (citation omitted)). Thus, if applicable, the court ordinarily retains jurisdiction and “the judicial process is suspended pending referral of such issues to the administrative body for its views.” (Internal quotation marks omitted.) *Waterbury* v. *Washington*, supra, 574. Whether to remand to an agency in a particular case is a discretionary matter for the trial court. Id., 575.

[11] General Statutes § 4-183 (a) provides in relevant part: “A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may *appeal* to the Superior Court as provided in this section. . . .” (Emphasis added.)

[12] See General Statutes (1887 Rev.) § 3895, which provides in relevant part: “Any assessor, member of the board of relief, selectman, committee, or collector, who shall do any unlawful act, or omit to do any necessary act connected with the levy, assessment, or collection of any tax, shall forfeit five dollars to the person aggrieved thereby, and any collector who shall charge or receive any illegal fees shall, in addition to said sum of five dollars, also forfeit double the amount of such illegal fees to the person aggrieved.”

[13] There is nothing in the record indicating that § 1-242 was brought to the attention of the trial court.

[14] We note that the $50 statutory penalty has not been increased in more than fifty years; see *Kraus* v. *Klee*, 5 Conn. Cir. 193, 194 n.1, 248 A.2d 515 (1968); effectively limiting any intended deterrent effect of the statute.

[15] General Statutes § 1-240 (b) provides: “Any member of any public agency who fails to comply with an order of the [FOIC] shall be guilty of a class B misdemeanor and each occurrence of failure to comply with such order

shall constitute a separate offense."

———————————————